IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SPARR, JR., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 5162 |
| | ) | |
| v. | ) | Judge Holderman |
| | ) | |
| CITY OF CHICAGO, SERGEANT STACEY | ) | |
| SMITH, JOSHUA SIMENTAL, and | ) | |
| UNKNOWN CHICAGO POLICE OFFICERS, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, MICHAEL SPARR, JR., and complaining of Defendants, CITY OF CHICAGO; SERGEANT STACEY SMITH; JOSHUA SIMENTAL; and UNKNOWN CHICAGO POLICE OFFICERS ("Defendants"), states as follows:

### Introduction

1.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2.   This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

3.   Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within district.

## Background

4.   Plaintiff, Michael Sparr, Jr., is an unmarried, 21-year-old man who lives with his parents at 437 W. 45th Street, Chicago, Illinois 60609.  He has been employed at Central Steel & Wire Co. as a dock worker for approximately three years.

5.   Defendant Sergeant Stacey Smith is a member of the Chicago Police Department.  At all times relevant hereto, Sergeant Smith was assigned to the Patrol Division of the 9th District, which encompasses Mr. Sparr's neighborhood.

6.   Defendant Joshua Simental is a member of the Insane Deuces, a gang with an active presence in Mr. Sparr's neighborhood.  Mr. Simental and other members of the Insane Deuces have a grudge against Mr. Sparr because Mr. Sparr has refused to join the gang.

7.   In early 2008, Sergeant Smith and Mr. Simental became romantically involved.

8.   Around that time, Sergeant Smith was often observed in Mr. Sparr's neighborhood, both in her police uniform and in plain clothes, interacting with Mr. Simental and other members and affiliates of the Insane Deuces.

## First False Arrest

9.   On the evening of Friday, June 13, 2008, Mr. Sparr went out with some friends in Mr. Sparr's car.  The group stayed out past midnight.

2

10.    In the early morning hours of June 14, while Mr. Sparr and his friends were driving home, a member of the Insane Deuces threw an object at Mr. Sparr's car.

11.    Mr. Sparr, who did not want any trouble with the Insane Deuces, decided to change direction and take another route home.

12.    As Mr. Sparr drove away, he was pulled over by unknown Chicago Police Officers.

13.    The officers explained that they had received a report of a person with a gun driving a black car in the area. The officers proceeded to handcuff Mr. Sparr and search his car, which contained no gun.

14.    Soon thereafter, Sergeant Smith arrived on the scene, as did other unknown Chicago Police Officers.

15.    The officers did not find a gun during their search of Mr. Sparr's car.  They told Mr. Sparr and his friends they would be free to go in a few moments, after the officers completed some paperwork.

16.    Sergeant Smith, however, disagreed with the officers' decision to let Mr. Sparr and his friends go.  She accused Mr. Sparr of breaking the windows on a car that belonged to a woman named Lorraine, a crime that had been reported to the police approximately one month earlier.

17.     On information and belief, Lorraine is in a romantic relationship with another member of the Insane Deuces and is a personal friend of Sergeant Smith's.

18.     At Sergeant Smith's direction, the officers placed Mr. Sparr and his friend in the back of a squad car.

19.     While Mr. Sparr and his friend sat in the back seat of the squad car, Joshua Simental and another member of the Insane Deuces approached the squad car and began flashing gang signs through the back windows.

20.     One of the officers directed Mr. Simental and his companion from the scene, but Sergeant Smith overruled him, stating that the men could stay.

21.     At Sergeant Smith's direction, the officers arrested Mr. Sparr and his friend without justification and proceeded to detain them overnight in a holding cell.

22.     Mr. Sparr was released from police custody the following morning.

23.     Mr. Sparr was charged criminally for the alleged property damage, but the charge was later dismissed in a manner indicative of innocence.

### Second False Arrest

24.     Five days later, on June 19, 2008, Mr. Sparr turned 21 years old.  That afternoon, Mr. Sparr and his girlfriend went out to buy pizza, which they ate on the front

4

porch of his girlfriend's house, also in Mr. Sparr's neighborhood.

25.     As they were eating, two unknown Chicago Police Officers drove up to the house and arrested Mr. Sparr.

26.     The officers accused Mr. Sparr of pointing a gun at a woman and her brother (who is also an Insane Deuce) in the neighborhood earlier that afternoon.

27.     The officers kept Mr. Sparr overnight in a holding cell without lawful justification.

28.     Mr. Sparr was charged for the alleged assault, all without probable cause to do so.

29.     The next morning, on Friday, June 20, Mr. Sparr was released on bond.

30.     The assault charges against Mr. Sparr were later dismissed in a manner indicative of innocence.

### The Shooting

31.     On Saturday, June 21, 2008, the day after Mr. Sparr was released from custody, Mr. Sparr's family threw him a surprise birthday party.

32.     The party took place in the evening, behind Mr. Sparr's home.

33.     That evening, Mr. Simental was a few blocks away from the party with Sergeant Smith, who was on duty at the time. Mr. Simental was riding in the front passenger seat of Sergeant Smith's Chicago Police Department squad car.

34.     Shortly after Sergeant Smith and Mr. Simental were observed in the squad car, and just as Mr. Sparr's party was winding down, Mr. Simental approached the scene of the party and shot Mr. Sparr in the back.

35.     Mr. Simental immediately fled from the area, and, within minutes, Sergeant Smith arrived on the scene. She appeared before any ambulance or other police officer arrived.

36.     Mr. Sparr was taken to the hospital for emergency medical treatment. The doctors did not remove the bullet from Mr. Sparr's back for fear that such a procedure would leave him permanently paralyzed.

37.     Mr. Simental was arrested for Mr. Sparr's shooting approximately two weeks after the shooting, on or about July 6, 2008.

38.     Mr. Simental has been charged with the attempted murder of Mr. Sparr. His criminal case is proceeding under Cook County Circuit Court No. 08 CR 13376.

39.     For her role in the shooting, Sergeant Smith was relieved of her street duties in the wake of the shooting and has since been under investigation by Chicago Police Department Internal Affairs.

40.     Defendant Simental's conduct toward the Plaintiff was significantly encouraged by the actions of the Defendant Officers.  There was a sufficiently close nexus between Defendant Simental's conduct toward the Plaintiff and the Defendant Officers' conduct toward the Plaintiff such that Defendant Simental's conduct may be treated as state action.

### Count I -- Section 1983
### Excessive Force

41.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

42.     As described more fully above, the conduct of Defendant Joshua Simental, acting under color of law, constituted excessive force in violation of the United States Constitution.

43.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

44.     As a proximate result of the misconduct described in this Count, Plaintiff suffered damages, including but not limited to mental distress and anguish.

7

## Count II -- Section 1983
## False Arrest/Imprisonment

45.    Each of the Paragraphs of this Complaint is
incorporated as if restated fully herein.

46.    As described more fully above, Defendants
falsely arrested and unlawfully detained Plaintiff without legal
justification.

47.    The misconduct described in this Count was
undertaken with malice, willfulness, and reckless indifference to
the rights of others.

48.    As a proximate result of the misconduct
described in this Count, Plaintiff suffered damages, including
but not limited to emotional distress and anguish.

49.    The misconduct described in this Count was
undertaken by the Defendant Officers within the scope of their
employment and under color of law such that their employer, City
of Chicago, is liable for their actions.

## Count III -- Section 1983
## Conspiracy

50.    Each of the Paragraphs of this Complaint is
incorporated as if restated fully herein.

51.    Prior to the shooting of Mr. Sparr, Defendants,
acting under color of state law, entered into an agreement to
kill Mr. Sparr.  They further agreed to use Sergeant Smith's
police powers to protect themselves from criminal charges and

8

other allegations of misconduct.  As a result of this agreement, Defendant Simental shot Mr. Sparr in the back.

52.     As described more fully above, Defendants acted in concert and reached an understanding to deprive the Plaintiff of his Constitutional rights.

53.     Plaintiff was deprived of his Constitutional rights in the manner described above.

54.     In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity with state actors acting under color of law.

55.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

56.     The misconduct described in this Count was undertaken by Defendant Smith within the scope of her employment and under color of law such that her employer, City of Chicago, is liable for her actions.

57.     As a proximate result of the misconduct described in this Count, Plaintiff suffered injuries, including but not limited to severe physical injuries and emotional distress.

### Count IV -- Section 1983
### Due Process

58.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

59.     As described more fully above, Defendants affirmatively placed Plaintiff in a position of danger that he would not otherwise have faced and failed to protect him from that danger.

60.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

61.     As a proximate result of the misconduct described in this Count, Plaintiff suffered damages, including but not limited to mental distress and anguish.

### Count V -- Section 1983
### Monell

62.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

63.     The misconduct described in this Complaint and in each Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.     As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.    As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

c.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.    City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department.  Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so; and

e.    The City of Chicago has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

### Count VI -- State Law
### Intentional Battery

64.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

65.     Defendant Simental shot Plaintiff in the back and did so intentionally.

66.     As described more fully in the preceding paragraphs the actions of Joshua Simental constituted offensive physical contact made without Plaintiff's consent.

67.     Defendant Simental's actions were undertaken intentionally, willfully and wantonly.

68.     The misconduct described in this Count was undertaken with intentional disregard of Plaintiff's rights.

69.     As a proximate result of the Defendant Simental's conduct, Plaintiff has suffered and continues to suffer from serious physical injuries and emotional distress.

### Count VII -- State Law
### False Arrest/Imprisonment

70.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

71.     As described more fully above, Defendants falsely arrested and unlawfully detained Plaintiff without legal justification.

72.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

73.     As a proximate result of the misconduct described in this Count, Plaintiff suffered damages, including but not limited to emotional distress and anguish.

12

74.    The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

WHEREFORE, Plaintiff, MICHAEL SPARR, JR., respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, SERGEANT STACY SMITH, JOSHUA SIMENTAL, and the UNKNOWN CHICAGO POLICE OFFICERS, awarding compensatory damages and attorneys' fees, as well as punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, MICHAEL SPARR, JR., hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

13

RESPECTFULLY SUBMITTED,


    S/Elizabeth Mazur
Attorneys for Plaintiffs

Arthur Loevy
Jon Loevy
Elizabeth Mazur
LOEVY & LOEVY
312 North May
Suite 100
Chicago, IL 60607
(312) 243-5900

Sidney Berger
Three First National Plaza
70 West Madison Street
Suite 3700
Chicago, Illinois 60602
(312) 558-6730